E. L. VANNOY, JR., V. THE STATE.

No. 21705. Delivered October 29, 1941.

The opinion states the case.

*George R. Thompson* and *Claud J. Carter,* both of San Antonio, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

This is an appeal from a jury verdict assessing one year in the county jail of Bexar County on a charge of negligent homicide by reason of having caused the death of a party while driving an automobile in excess of forty-five miles per hour.

The offense is alleged to have occurred on a public highway in Bexar County on the 13th day of October, 1940. The evidence reveals that appellant was a young army officer stationed at

Randolph Field and was going into the city of San Antonio at a late hour on highway number eighty-one and that he arrived at a point about three and one-half miles from the city limits where an accident had occurred a few minutes previously, causing a great many cars to stop and a large crowd to congregate on the side of the pavement, while a number of them were in the middle of the highway. As a result of the first accident one of the victims was lying on the pavement on appellant's right hand side while the two vehicles involved also formed an obstruction to the same portion of the highway. A party who had come to the scene immediately placed within approximately fifty feet of the obstruction, and in the direction of appellant's approach, a small flare which was burning at the time. Other vehicles had approached the scene and, accepting the flare as a danger signal, stopped and pulled to one side. Appellant and his companion, another Lieutenant in the service, did not see the flare until they were within a few feet of it. He was driving the car at approximately fifty miles an hour, according to his own testimony, before he discovered the flare and he immediately threw on his brakes and swerved to the left in an effort to avoid as much as possible a collision with the crowd on the highway. In doing so he struck Mrs. Willman, for whose death he is now being prosecuted, and also her husband, who died as a result.

Numerous questions are raised on this appeal, but it will not be necessary to discuss them all. We think several errors were committed which will not be repeated on another trial of the case, making it unnecessary to discuss them fully.

Appellant takes the position that inasmuch as he had slowed his car down to approximately twenty-five miles an hour at the very time of the collision he was not violating the law as it then existed, and that his accidental collision would not support the conviction. It is important to say that this position cannot be sustained. Without dispute, he was going in excess of forty-five miles an hour sufficiently close to the collision that the jury may find it was the cause of it. That he threw on his brakes for an instant and slowed the speed of his car, which was still out of his control as a result of his excessive speed, would not be sufficient within itself to take it without the law. His contention in this respect is overruled.

By bill of exception number two complaint is made of the testimony of Jack Liegel who said that immediately following

the collision he saw a Scotch bottle partially full of liquor on the back seat of appellant's car. Apart from the jury the court inquired as to the details, and found that the witness saw the bottle, but did not smell or taste of its contents. Upon this theory he excluded the evidence. He then permitted counsel to ask the witness in the presence of the jury if he smelled the bottle, tasted or handled it in any manner and, upon the basis of such testimony to disqualify him as a witness, the court instructed the jury not to consider such evidence. Considering this evidence in the light of the facts which went to the jury. that two people were killed, a woman and a man, any improper evidence concerning the presence of whisky was exceedingly inflammatory. To withdraw it from the jury in the manner stated could not entirely erase it from their minds. That this evidence was erroneous is shown by the undisputed fact that there was no "back seat" to appellant's car and the whisky, if seen by the witness, was in the car of some other person and not that of appellant. Under such unfortunate circumstances as here considered, it is sufficiently difficult that appellant be required to answer for all of his own misdeeds and certainly he should not be charged to answer for another. As we view this, it would have been far less hurtful that this evidence go to the jury so that the party on trial might have rebutted it. This matter is considered in connection with bill of exception number thirteen, complaining of counsel's argument in closing the prosecution. Inflammatory evidence placed before the jury cannot always be withdrawn and we think this is a case for the application of the rule.

Bill of exception number three complains of the cross-examination of Lieutenant C. R. Walters, the companion of appellant in the car, who was asked about having drunk some spiked punch at a reception they attended earlier in the evening. He was also asked if he had not been found guilty in the justice court of being drunk on that occasion. This the witness denied, but was forced to explain that a charge was filed against him and that the justice of the peace found him guilty because he had no witnesses there and that he had appealed his case, which had never been tried. Clearly, evidence of a conviction for a misdemeanor not involving moral turpitude is incompetent as impeaching testimony. Garrison v. State, 252 S. W. 511; Smith v. State, 51 S. W. (2d) 686; Goode v. State, 24 S. W. (2d) 102; Bryan v. State, 260 S. W. 846; Powell v. State, 131 S. W. 591. Had the witness been asked the questions for the purpose of testing the accuracy of his statements it might and

would be under some circumstances permissible to show that he was drinking, (Smith v. State, supra) but we do not understand that it is ever permissible to substitute the judgment of a justice of the peace or any other court for the right of the jury to determine this question of fact for themselves. Furthermore, it is not shown that the judgment was final and under no condition apparent to us would the judgment be admissible unless it be a final one. This error calls for reversal of the case and the matters which it brings before the jury's mind, like the preceding one on the same subject, must be considered in connection with a discussion of bill of exception number thirteen.

It was once the announced doctrine that a witness could only be asked concerning his general reputation for truth and veracity in his neighborhood. The court properly receded from this position and the old theory that one who is charged with a felony by indictment or actually convicted of lesser offenses involving moral turpitude may be conclusively presumed still to have preserved within himself the priceless virtue of truth, though every other virtue is gone, no longer obtains, yet there is a limit to which the court should go and this limit, we think, has been reached and that the line has been well marked by the decisions of the courts. That one who has fallen a victim, usually without design, to occasional improper practices should for such reason be discredited as a witness is as illogical as would be the conclusion that he has thereby lost all pride, ambition and business ability, or to have gone beyond recall in the depths of degradation. So much is this believed to be true that we think the flood gates admitting impeaching testimony should not be wider opened, nor can a question such as that before us pass with light consideration.

Bill of exception number six complains of the testimony of a witness who was permitted to say, after identifying the parties and the place of the tragic event, "There was such a mob around,—they mentioned killing them,—hollering 'Kill them! Kill them!'" The witness placed the scene before the jury in a very vivid manner, picturing the demonstrations and exclamations of third parties as evidence in the case. Such parties should have been before the jury confronting the accused and subject to the cross examination which he might give. The witness referred to them as having acted as a mob who had witnessed the event, judged the facts and pronounced the verdict of death against the party on trial and his companion, a witness in his behalf. The cautious trial judge did what he could to

erase the effect produced by this testimony by instructing the jury not to consider the statement of the witness, as complained of in bill of exception number six. The evidence was too inflammatory. The picture had been painted in the minds of the jurors and the impression was not erasable. It too much overshadowed the very evidence of the case and the instruction of the court. It is unthinkable that they could write a verdict and forget it. The motion to declare a mistrial should have been granted.

Bill of exception number thirteen complains of the argument of State's counsel in closing his case in the following language:

"We did not try to show as to whether or not Lt. Vannoy had been drinking, because if he was drinking and was drunk at the time, it was murder. He is being charged with the act of negligent homicide."

Considered in connection with the other bills of exception heretofore mentioning it, this argument was wholly uncalled for except as a discussion of the alleged fact of drunkenness. It was unnecessary for the prosecutor to make any explanation to the jury as to why he did not try to prove something inadmissible in the trial of the case. It brought back to mind inadmissible evidence on the subject and told the jury that, " * * * if he was drinking and was drunk at the time, it was murder." He then said he was being tried for negligent homicide, a lesser offense than that for which he inferred he was really guilty. This would seem to be an unwarranted appeal for the extreme penalty. The response of the jury, as reflected by its verdict, indicates the effectiveness of the argument and the injury which resulted from it. It is enough that a man be called upon to answer for the offenses which may be carved out of his conduct under the law, but to place before a jury imputations of a greater offense in such a manner as to induce them to assess a heavier penalty than the true facts would justify may be as much out of line as it would to state positively facts not in the record. Undoubtedly, the argument would not be made on another trial, but, in view of the close questions in this case which are not discussed, we think it advisable that we give the trial court the benefit of our views on the bill as it appears in this record.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded.